**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | : | |
|---|---|---|
| **ANGELA M. KRUEGER, et al.,** | : | **Case No. 06cv2375** |
| | : | |
| **Plaintiffs,** | : | **JUDGE KATHLEEN O'MALLEY** |
| | : | |
| **v.** | : | |
| | : | |
| **TIMOTHY P. GILLIGAN, et al.,** | : | **OPINION & ORDER** |
| | : | |
| **Defendants.** | : | |

In this case *pro se* Plaintiffs Angela M. Krueger, John Szakal, and Stephen T. Haley bring suit against various individual municipal officials and personnel - including a municipal court judge, four named and unnamed police officers, a chief of police, a city prosecutor, and a municipal court bailiff - as well as the City of Parma, Ohio, the City of Broadview Heights, Ohio (collectively, "the City defendants"), and the Ohio State Highway Patrol (OSHP).[1] Although Plaintiffs' complaint contains only three formal counts, some counts contain multiple claims. In all, Plaintiffs assert claims under 42 U.S.C. § 1983 for deprivation of their Fourth and Fourteenth Amendment rights; under 42 U.S.C. § 1985(2) for conspiracy to violate Plaintiffs' constitutional rights; for declaratory relief under O.R.C. § 2721; for injunctive relief under O.R.C. § 2727; and for false imprisonment.

---

[1]  Specifically, the individual defendants are Parma Municipal Court Judge Timothy P. Gilligan ("Judge Gilligan"); Broadview Heights Patrolman Mike Semanco; three John Doe Broadview Heights Patrolmen; Broadview Heights Chief of Police Robert Lipton (collectively, "the police officer defendants"); Broadview Heights City Prosecutor Ann C. Oakar; and Parma Municipal Court Bailiff Sylvia Schwark

On September 29, 2006, this action was removed to this Court from the Court of Common Pleas for Cuyahoga County, Ohio. Several motions are currently pending before the Court, including motions to dismiss filed by Judge Gilligan (Doc. 4), the OSHP (Doc. 6), and City Prosecutor Oakar (Doc. 7), and a motion filed by Plaintiffs to remand their state law claims and hold in abeyance their federal claims (Doc. 11).

For the reasons outlined below, the Court **GRANTS** the motions to dismiss filed by Judge Gilligan, the OSHP, and Ms. Oakar, all of which are unopposed. All claims against those defendants are **DISMISSED** **with prejudice**. In addition, the Court *sua sponte* **DISMISSES** **without prejudice** Plaintiffs' federal claims as to the police officer defendants, Bailiff Schwark, and the City defendants, and **DISMISSES** **with prejudice** Plaintiffs' state law claims. Because the Court dismisses Plaintiffs' claims, the Court **DENIES as moot** Plaintiffs' motion to remand their state law claims and hold in abeyance their federal claims.

## I.      BACKGROUND

Plaintiffs' claims arise from two separate but related occurrences, the circumstances of which will be accepted as true as alleged in Plaintiffs' complaint, as they must at this stage of the proceedings. *Craighead v. E.F. Hutton & Co.*, 899 F.2d 485, 489 (6th Cir. 1990) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)). The first occurrence relates to a traffic stop executed by members of the Broadview Heights Police Department, including Defendant Semanco. On April 1, 2006, Plaintiff Krueger alleges she was pulled over while driving from Cleveland, Ohio to Cuyahoga Falls, Ohio with her two children, ages three and six-months old, as well as a male companion, Plaintiff Szakal. Krueger alleges that an erroneous search by the police of the Law Enforcement Automated Data System ("LEADS") revealed that there was a felony arrest warrant

attached to her vehicle registration.  After the initial officers, including Defendant Semanco, made

the stop, additional officers in two additional patrol cars arrived at the scene.[2]  Plaintiffs allege that

the officers focused their attention on Szakal (apparently the supposed warrant was for a male), and,

after taking Krueger's information and Szakal's social security number back to the patrol car,

returned and ordered Szakal out of the car.  Plaintiffs allege that the officers searched Szakal and

"began circling Krueger's automobile looking under the car as well as inside the car."  (Complaint

at ¶ 31.)  Plaintiffs state, without explanation, that Szakal was falsely arrested and falsely

imprisoned.  Plaintiffs allege that Semanco then struck one of the car's headlights with his flashlight,

causing it to become inoperable, and issued a citation to Krueger for failure to have two operable

headlights.

The second occurrence upon which this lawsuit is based relates to Krueger's subsequent

appearances in court to contest the traffic citation issued by Semanco.  Krueger appeared at the

Mayor's Court in Broadview Heights, entered a plea of "not guilty," and moved to dismiss the

citation based on facial mistakes she alleges it contained.  Her case and her motion were referred to

the Parma Municipal Court, where Krueger attended a pretrial conference on May 22, 2006.  Krueger

alleges that, at the pretrial conference, City Prosecutor Ann Oakar and Parma Municipal Court

Bailiff Sylvia Schwark attempted to coerce her into accepting a plea agreement.  Krueger, however,

did not enter into a plea agreement.  Apparently, Krueger left the pretrial with the understanding that

a trial date would be mailed to her.  The docket of her case, however, which was attached to

Plaintiffs' complaint, reflects that a pretrial hearing was set for June 6, 2006.  Because Krueger

---

[2]  The complaint is inconsistent as to how many additional cars and officers arrived at the
scene.  One paragraph explains that three additional cars arrived and another paragraph explains
that two arrived.  (Complaint at ¶¶ 4, 24.)

claims she was unaware of that pretrial hearing, she did not appear on that day and received by mail a Notice of Continuance resetting the pretrial for July 25, 2006.

On July 25, 2006, Krueger alleges that she appeared at the Parma Municipal Court, waited for over two hours before meeting with Ms. Oakar, and was again faced with confrontational conversations with Bailiff Schwark. Thereafter, Krueger alleges that she met with Ms. Oakar and requested certain discovery, including the LEADS report used by Officer Semanco. After waiting for a period of time, Krueger alleges that she received the LEADS report from the Assignment Clerk of the court and was told by the clerk that a trial date would be sent to her in the mail. Krueger then left the court.

Two days later, Krueger received a notice that an arrest warrant had been issued by Judge Gilligan for her failure to appear at the July 25, 2006 pretrial hearing. Krueger alleges that the warrant was based on false information provided to Judge Gilligan by Ms. Oakar and Bailiff Schwark. It appears from the complaint that the arrest warrant has not been executed and that Krueger has not been placed in custody.

Based on the traffic stop and the citation executed and issued by the defendant police officers as well as the subsequent arrest warrant, Plaintiffs allege in Count I that they have been deprived of their Fourth Amendment right to be free from unreasonable search and seizure and their Fourteenth Amendment rights to due process and equal protection in violation of 42 U.S.C. § 1983. Plaintiffs allege that all the individual defendants, including Judge Gilligan, Prosecutor Oakar, Bailiff Schwark, and the police officers, conspired to deprive Plaintiffs of their constitutional rights by issuing a fraudulent arrest warrant, which Plaintiffs claim violates 42 U.S.C. § 1985(2). Plaintiffs also allege that the wrongful activities are consistent with "institutionalized, widespread practice,

4

policy or custom" of the cities of Broadview Heights and Parma.  (Complaint at ¶ 81.)

In Count II of the complaint, Plaintiffs seek a Declaratory Judgement.  They request that, with regard to the LEADS report, the Court make the following declarations:

> (1) the information on the LEADS report was solely the result of running Ms. Kruger's plate number through the system;
>
> (2) the officer who used the LEADS system demonstrated a lack of training;
>
> (3) the failure of the LEADS report to contain accurate information places innocent people in dangerous positions;
>
> (4) it is the responsibility of law enforcement to verify the accuracy of the information in LEADS report; and
>
> (5) that properly trained officers would have realized there was no probable cause to arrest either Mr. Szakar or Ms. Krueger.

With regard to the arrest warrant issued by Judge Gilligan for failure to appear in court, Ms. Krueger asks the Court to declare:

> (1) that the arrest warrant lists the charges as driving a vehicle without two working headlights and failure to appear for pre-trial.;
>
> (2) the charge of failure to appear is defined by Ohio statute as an act of contempt of court;
>
> (3) the traffic rules do not supercede the rules for arrest for contempt of court;
>
> (4) that the issuance of the arrest warrant violated her constitutional rights;
>
> (5) that the arrest warrant violated Ohio law,
>
> (6) a charge of contempt was not filed in writing with the clerk of courts;

5

(7) the case docket clearly shows she has not been given a hearing on the contempt charge;

(8) that Ms. Krueger did appear for the pre-trial in question and the false information was used to support the warrant; and

(9) that Judge Gilligan, Ms. Oakar, and Ms. Schwark conspired to deprive Ms. Krueger of her constitutional rights.

Count III of Plaintiffs' complaint is for false imprisonment as a result of the arrest warrant. As to Count III, Krueger claims that she "has been restrained at her liberty for reasons she cannot drive without the fear of being arrested . . ."  (Complaint at ¶ 54.)

For relief, Plaintiffs seek, among others, a temporary and permanent injunction ordering that Judge Gilligan quash the arrest warrant, that the underlying criminal case *Broadview Heights v. Krueger*, Case No. 06TRD03101, be stayed pending resolution of this action, and that all defendants be enjoined from engaging in conspiracies or implementing unconstitutional policies.[3]  In addition, Plaintiffs seek compensatory damages from all defendants except Judge Gilligan, and punitive damages, and all other appropriate relief, including costs and fees.

## II.    ANALYSIS

While *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the district court may dismiss an action *sua sponte* if the complaint is so "implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion" as to deprive the court of jurisdiction.  *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999) (*citing Hagans v. Lavine*, 415 U.S. 528, 536-37 (1974)).  In this case,

_____

[3]  Judge Gilligan reports in his motion to dismiss that Plaintiffs' request for <u>temporary</u> injunctive relief has been withdrawn.  That withdrawal occurred prior to the removal of the action to this Court and is not reflected on this Court's docket. It appears, however, that the request for the permanent injunction remains.

not only are most of the arguments in the various defendants' motions to dismiss well-taken and unopposed, the remaining claims not addressed in those motions satisfy the criteria for *sua sponte* dismissal.

### A.     Proper Parties

As an initial matter, the Court notes that, while Stephen T. Haley is a plaintiff in this action, he does not assert any claims.  All of the allegations in the pleading pertain to either Krueger or Szakal.  The pleading indicates that Haley is named as a plaintiff "pursuant to an assignment by Krueger and Szakal of a security interest in any financial judgment which may result from the damages which occurred to Krueger and Szakal as a result of the defendants' unlawful acts... ." (Complaint at ¶ 9.)  A party must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.  *Warth v. Seldin*, 422 U.S. 490, 499 (1975); *Allstate Insurance Co. v. Wayne County*, 760 F.2d 689, 693 (6th Cir. 1985).  The fact that Haley may be collaterally affected by the adjudication of Krueger's and Szakal's rights does not extend the Court's Article III powers over him as a plaintiff in this matter.  *Allstate Insurance Co.*, 760 F.2d at 692.  Haley lacks standing to assert any of the claims asserted in this pleading and he is, therefore, dismissed from this action.  The term "Plaintiffs" as used herein shall refer only to Krueger and Szakal.

### B.     Federal Claims (Count I)

#### 1.     All Defendants

Put simply, because Plaintiffs' criminal case is still ongoing in state court, Plaintiffs' federal claims (Count I) under §§ 1983 and 1985(2) may not be asserted against any of the Defendants at this time.  There are two reasons why Plaintiffs may not assert their federal claims at this time, both

of which were raised by Judge Gilligan in his Motion to Dismiss (Doc. 4), which was not opposed by Plaintiffs.

First, pursuant to the Supreme Court's decision in *Younger v. Harris*, 401 U.S. 37 (1971), a federal court may not interfere with an ongoing state court proceeding.  *Younger* abstention is appropriate when "the state proceeding 1) is currently pending, 2) involves an important state interest, 3) affords the plaintiff an adequate opportunity to raise constitutional claims."  *Coles v. Granville*, 448 F.3d 853, 865 (6th Cir. 2006).  In this case, a state proceeding is currently pending and a state's prosecution of alleged criminals is certainly an important interest.  In addition, Plaintiffs' constitutional claims relate to the sufficiency of the traffic citation and the arrest warrant, which Plaintiffs will have the opportunity to raise in their pending state criminal proceedings.[4] "When a person is the target of an ongoing state action involving important state interests, a party cannot interfere with the pending state action by maintaining a parallel federal action involving claims that could have been raised in the state case."  *Id.* at 865.

In addition to the *Younger* abstention doctrine, the principles set out by the Supreme Court in *Heck v. Humphrey*, 512 U.S. 477 (1994) militate against this Court's adjudication of Plaintiffs' federal claims. In that case, the Supreme Court held that a plaintiff may not challenge the constitutionality of a conviction or imprisonment until and unless the conviction "has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas

---

[4] It appears, moreover, that Plaintiffs do not dispute that their federal claims should not go forward at this time, as they ask the Court in their Motion to Remand (Doc. 11) "to hold in abeyance the federal claim found in Count One of the Complaint" pending adjudication of their state claims.  (Doc. 11 at p. 1.)

corpus, 28 U.S.C. § 2254." *Id.* at 486-87.  In so holding, the Supreme Court first compared a § 1983 claim challenging an unconstitutional conviction to a claim in tort for malicious prosecution, in which a plaintiff is required to demonstrate, as an element of his claim, that the prior criminal proceeding terminated in favor of the plaintiff.  *Id.* at 484.  The Supreme Court explained that such a requirement

> avoids parallel litigation over the issues of probable cause and guilt . . . and it precludes the possibility of the claimant succeeding in the tort action after having been convicted in the underlying criminal prosecution, in contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction.

*Id.* (quoting 8 S. Speiser, C. Krause, & A. Gans, American Law of Torts § 28:5, p. 24 (1991)).

In the present case, adjudication of Plaintiffs' federal claims would create the precise type of parallel litigation the Supreme Court cautioned against in *Heck v. Humphrey*.  Krueger must demonstrate that her criminal proceedings terminated in her favor before she may bring a § 1983 claim attacking the citation and arrest warrant that are the subject of those proceedings.  She has not - and cannot - do so and, therefore, her § 1983 claims must be dismissed at this time.

In addition to Plaintiffs' § 1983 claim, Plaintiffs' claim under 42 U.S.C. § 1985(2) must also fail for two reasons.  First, the section under which Plaintiffs bring their claim - the second clause of § 1985(2) - requires an allegation of "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action."  *Fox v. Mich. State Police Dept.*, 173 Fed. Appx. 372, 376 (6th Cir. 2006) (quoting *Kush v. Rutledge*, 460 U.S. 719, 726 (1983)).  Plaintiffs do not make any such allegation and, therefore, cannot proceed under § 1985(2).  Second, "the absence of a section 1983 deprivation of rights precludes a section 1985 conspiracy claim predicated on the same allegations."  *See Conrad v. Mich. Dep't. of Corr.*, No. 1:91-cv-99, 1992 WL 547168, at *3

9

(W.D. Mich. Oct. 5, 1992) (quoting *Caldeira v. County of Kauai.*, 866 F.2d 1175, 1182 (9th Cir.1989)).  Because Plaintiffs' § 1985 claim is premised on the same allegations as their flawed § 1983 claims, their § 1985 also must fail.

For those reasons, Plaintiffs' federal claims cannot be maintained against <u>any</u> of the defendants at this time.  Although only some of the defendants have moved to dismiss Plaintiffs' complaint, it is clear that Plaintiffs' federal claims cannot be asserted against any of the defendants and must be dismissed without prejudice as to all defendants.  Indeed, as mentioned above, it appears that Plaintiffs themselves did not intend to assert these claims at this time, as they request that the Court hold them in abeyance pending determination by a state court of their state law claims.

### 2.    Judge Gilligan and Ms. Oakar

In addition, even if Plaintiffs could replead the allegations under § 1983 after resolution of the state criminal proceedings in their favor, Plaintiffs could not bring that claim against Judge Gilligan or Ms. Oakar.

It is well-established that judges and prosecutors are immune from civil suits for monetary damages arising out of the performance of their functions – including those brought under 42 U.S.C. § 1983.  *See Mireles v. Waco*, 502 U.S. 9, 11 (1991) ("[J]udicial immunity is an immunity from suit, not just from ultimate assessment of damages.") (citations omitted); *Kalina v. Fletcher*, 522 U.S. 118, 118 (1997) ("[A] criminal prosecutor is fully protected by absolute immunity when performing the traditional functions of an advocate."); *Brookings v. Clunk*, 389 F.3d 614, 617 (6th Cir. 2004) (noting that state court judges are immune from liability for suits brought under 42 U.S.C. § 1983).  Plaintiff's § 1983 claim would be barred even if the allegations could be read to assert malice or bad faith.  *Mireles,* 502 U.S., at 11 ("[J]udicial immunity is not overcome by allegations of bad faith or

10

malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial.") (citations omitted); *Grant v. Hollenbach*, 870 F.2d 1135 (6th Cir. 1989) (recognizing that the advocatory decisions of prosecutors are protected by absolute immunity irrespective of bad faith or malice). *Brookings*, 389 F.3d, at 617 ("[J]udicial immunity applies to acts performed maliciously and corruptly as well as acts performed in bad faith or with malice . . . .") Plaintiff, thus, cannot bring suit for monetary damages against Judge Gilligan or Ms. Oakar for the actions allegedly taken in the course of their respective judicial and prosecutorial duties.

The above principles apply only to a claim for monetary damages. In this case, Plaintiffs also request injunctive relief in the form of an injunction ordering Judge Gilligan to quash the unlawful arrest warrant and stay the criminal proceeding, and an injunction ordering all defendants to cease engaging in a conspiracy against Plaintiffs. As to Judge Gilligan, the requested relief cannot be granted for the reasons explained above relating to *Younger* abstention and *Heck v. Humphrey*. Moreover, Plaintiffs will only be able to reassert their claims under § 1983, if at all, after the underlying criminal proceeding has terminated in their favor. In that event, Plaintiffs' injunctive relief will have been rendered moot. As to the remaining defendants, including Ms. Oakar, because Plaintiffs' claim for a conspiracy under § 1985(2) fails for the reasons explained above, their request to enjoin defendants from continuing to engage in an unconstitutional conspiracy also must fail.

Accordingly, Plaintiffs may not assert any claims against Judge Gilligan and Ms. Oakar for either monetary damages or injunctive relief, even if they have an opportunity to later replead those claims in federal court. Plaintiffs' federal claims, therefore, must be dismissed with prejudice as to Judge Gilligan and Ms. Oakar.

11

### 3.    OSHP

In addition, Plaintiffs' federal claims as to the OSHP must be dismissed with prejudice.  The OSHP is an agency or instrumentality of the State of Ohio and, therefore, may not be sued in federal court pursuant to the Eleventh Amendment.  In addition,  § 1983 applies only to a "person," and the United States Supreme Court expressly has held that a § 1983 claim cannot be maintained in either state or federal court against a State because a State is not a "person" for purposes of that statute.  *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989).  Accordingly, Plaintiffs cannot maintain their federal claims against the OSHP in either federal or state court, and those claims must be dismissed with prejudice.

### 4.    Bailiff Schwark

Krueger alleges that Bailiff Sylvia Schwark on two occasions involved herself in plea discussions between Krueger and the City Prosecutor Oakar.  She also claims Schwark failed to inform Judge Gilligan that Krueger was present in the court building on the date of the pre-trial.  Krueger asserts that these action violated her right to due process.  The Fourteenth Amendment provides that a state may not "deprive any person of life, liberty, or property, without due process of law."  It does not prohibit every deprivation by the state of a person's life, liberty or property.  *Harris v. City of Akron*, 20 F.3d 1396, 1401 (6th Cir. 1994).  Only those deprivations which are conducted without due process are subject to suit under 42 U.S.C. § 1983.  *Id.*  It is not clear whether Krueger intended to assert a claim for procedural due process, substantive due process, or both.  The Court will therefore examine her allegation in light of both of these claims.

As the first step in any due process inquiry, Krueger must allege that she was deprived of a protected liberty or property interest as a result of the defendant's conduct.  It is well settled that a

12

person charged with a crime has no constitutional right to plea bargain. *Weatherford v. Bursey*, 429 U.S. 545, 561 (1977). Absent a constitutional right to a plea deal, Krueger had no protected liberty or property interest in unimpeded negotiations of a plea deal. Krueger's claim that Schwark inserted herself into plea negotiations with City Prosecutor Oakar, does not state a claim for due process violations. To the extent, however, that Krueger is claiming that Schwark failed to inform Judge Gilligan that Krueger had been in the building for the pre-trial, a liberty interest may arguably be implicated as a warrant for Krueger's arrest was issued for failure to appear in court, which carries with it a contempt of court charge.

This allegation, nevertheless, is not cognizable in a § 1983 action at this time. Because the criminal action against Krueger is still on-going and these allegations go to the validity of the warrant and the contempt charges, this Court cannot consider them unless the charges are resolved in her favor. *See Heck*, 512 U.S. at 486. The claim pertaining to Schwark's alleged role in the issuance of a warrant for Krueger's arrest is dismissed without prejudice.

To the extent that Krueger intended to assert a substantive due process claim, it too is subject to dismissal. There are two types of substantive due process claims. The first type includes claims that involve official acts which are unreasonable, arbitrary and cause a deprivation of a substantive right specified in the Constitution or a federal statute. *Mertik v. Blalock*, 983 F.2d 1353,1367 (6th Cir. 1993); *Parate v. Isibor*, 868 F.2d 821, 831 (6th Cir. 1989). Krueger does not suggest another constitutional right which may be implicated by Schwark's actions, and none is readily apparent on the face of the pleading. The other type of substantive due process claim is directed at official acts that "so shock the conscience" that they are unconstitutional regardless of the procedural protections provided. *Parate*, 868 F.2d at 832. A citizen does not suffer a constitutional deprivation every time

13

he is subjected to some form of harassment by a state agent. *Id.* at 833. The conduct asserted must be "so severe, so disproportionate to the need presented, and such an abuse of authority as to transcend the bounds of ordinary tort law and establish a deprivation of constitutional rights." *Id.* There are no facts presented in plaintiff's complaint to suggest Schwark's actions meet this extreme standard.

### C.  State Claims (Counts II and III)

#### 1.  Declaratory Judgment (Count II)

The court now turns its attention to Plaintiffs' request for declaratory relief in Count II of their complaint. Federal courts are always "under an independent obligation to examine their own jurisdiction," *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231(1990), and may not entertain an action over which jurisdiction is lacking. *See Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 701 (1982). The statutes providing for the issuance of a declaratory judgment, however, do not create an independent basis for subject matter jurisdiction. *See Heydon v. Mediaone of Southeast Michigan*, 327 F.3d 466, 470 (6th Cir. 2003)(examining the Federal Declaratory Judgement Act, 28 U.S.C. § 2201, and Rule 57 of the Federal Rules of Civil Procedure). It merely provides the court with discretion to provide a certain type of relief if the plaintiffs are entitled to judgment under some other federal or state law. *Id.* Therefore, prior to requesting declaratory relief, Plaintiffs must supply a well-pleaded complaint which otherwise states a claim for relief. In this case, Plaintiffs seek two types of declarations. First, they request that the Court make conclusive declarations regarding the facts pertinent to the civil rights claims set forth in Count I. They also ask the Court to make legal declarations with respect to the claimed federal civil rights violations stated under Count I of the complaint. Neither of these requests represents a

14

separate cause of action which has not already been addressed by the court.  Their requests for declaratory relief are therefore not independently cognizable.

### 2.    False Imprisonment (Count III)

Plaintiffs also include claims against Defendants for false imprisonment in Count III of the complaint.  This claim pertains only to Plaintiff Krueger and is based on her allegation that, as a result of her arrest warrant, "she has been restrained at her liberty for reasons she cannot drive without the fear of being arrested . . ." (Complaint at ¶ 93.)  Under Ohio law, "[f]alse imprisonment occurs when a person confines another intentionally without lawful privilege and against his consent within a limited area for any appreciable time, however short."  *Bennett v. Ohio Dept. of Rehab. & Corr.*,  573 N.E.2d 633, 636 (Ohio 1991) (quotations omitted).  Leaving aside whether Krueger adequately alleges that she was "confined" in a "limited area," Krueger's claim for false imprisonment fails as a matter of law because an arrest warrant constitutes a "lawful privilege."  Even "[i]f an arrest is issued based upon false charges, the only claim that could be made is for malicious prosecution, not false arrest or false imprisonment, because the arrest and imprisonment are lawful."  *Hamilton v. Best Buy*, 2002 WL 242542 at *2 (Ohio App. 2 Dist. Fed. 15, 2002).  In this case, Krueger has failed to state a claim for false imprisonment, and her claim must be dismissed.

## III.    CONCLUSION

For the reasons outlined above, Plaintiffs' § 1983 claims (Count I) against Officer Semanco, John Does #1 - #3, Police Chief Robert Lipton, Bailiff Sylvia Schwark (only pertaining to the issuance of the arrest warrant), and the cities of Broadview Heights, Ohio and Parma, Ohio, are **DISMISSED <u>without prejudice</u>**.  All of Plaintiffs' remaining claims, including all claims against

15

Judge Gilligan, Prosecutor Oakar, and the OSHP, and all state law claims (Count II and III) as to all Defendants, are **DISMISSED with prejudice**.

In so doing, the Court **GRANTS** Judge Gilligan's Motion to Dismiss (Doc. 4), the OSHP's Motion to Dismiss (Doc. 6), and Ms. Oakar's Motion to Dismiss (Doc. 7); and **DENIES as moot** Plaintiffs' Motion to Remand (Doc. 11).

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), than an appeal from this decision could not be taken in good faith.


**IT IS SO ORDERED.**


s/Kathleen M. O'Malley
**KATHLEEN McDONALD O'MALLEY**
**UNITED STATES DISTRICT JUDGE**

**Dated: November 17, 2006**

16